**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH,<br><br>      Plaintiff<br><br>v.<br><br>VITAL'S INTERNATIONAL GROUP, YAYSAVE, LLC, and J. STRICKLAND AND CO.,<br><br>      Defendants | Case No.:_____<br><br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, and the Class Action Fairness Act ("CAFA"), defendant J. Strickland and Co. ("Strickland"), by and through undersigned counsel, hereby removes to this Court the Superior Court action, No. 2016 CA 008745 B, described below, and in support thereof, states as follows:

### INTRODUCTION

1.  On or about December 5, 2016, Plaintiffs commenced a suit in Superior Court for the District of Columbia, by filing a bill of complaint entitled *Center for Environmental Health v. Vital's International Group et al.,* No. 2016 CA 008745 B (the "Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.  The Complaint makes allegations against three Defendants: Vital's International Group, which the Complaint alleges is a California corporation with its principal place of business in California; Yaysave, LLC, which the Complaint alleges is a California limited liability company with its principal place of business in California; and Strickland, a Mississippi corporation with its principal place of business in Mississippi.

1

3.     On December 19, 2016, Strickland was served with the complaint by registered mail.  A true and correct copy of the Summons received by Strickland is attached as Exhibit B.  A true and correct copy of the Information Sheet received by Strickland is attached as Exhibit C.  A true and correct copy of the Initial Order and Addendum received by Strickland is attached as Exhibit D.  A true and correct copy of a Praecipe to Extend Time filed by Defendants Vital's International Group and Yaysave, LLC is attached as Exhibit E.  A true and correct copy of an electronic print-out of the D.C. Superior Court docket is attached as Exhibit F.  Exhibits A through F hereto constitute all of the process, pleadings, and orders in this case.

4.     The Complaint alleges that Defendants' hair products are falsely advertised, marketed, labeled, sold and represented to stimulate or cause hair growth.  Compl. ¶¶ 1-2.  Among other allegations, the Complaint alleges that the name of Strickland's "Doo Gro" brand products "itself represents that the products grow hair," *id.* ¶ 15.  The Complaint alleges that Defendants' conduct constitutes an unlawful trade practice under the District of Columbia Consumer Protection Procedures Act, *id.* ¶ 4, and alleges as its sole Count violations of that Act, *id.* ¶¶ 36-42.  Plaintiff states that it brings this lawsuit "on behalf of itself and the general public." *Id.* ¶ 5.  Strickland denies Plaintiff's allegations accusations, and avers that the labeling of the specific product to which the Complaint refers plainly (and accurately) states that the product "helps reduce breakage allowing hair to grow longer."

5.     The Complaint seeks "declaratory and injunctive relief to halt Defendants' deceptive marketing and sale of the [products at issue], and to ameliorate the effects of this conduct." *Id.*  More specifically, the Prayer for Relief "demands judgment and relief on behalf of itself and the general public of the District of Columbia against Defendants," including a declaration that Defendants' conduct violates the Act; an order preliminarily and permanently

enjoining Defendants from conducting their business through the unlawful trade practices described in the Complaint; an order requiring Defendants to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits and qualities Defendants have claimed; an order requiring Defendants to implement whatever measures are necessary to remedy the unlawful trade practices described in this Complaint; and such other and as well as relief as may be just and proper.

## BASIS FOR JURISDICTION

6.      This Court has original jurisdiction over this case pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005) (codified at 28 U.S.C. §§ 1711-1715, 1332(d), and 1453).   As detailed below, removal is appropriate because the removed case constitutes a purported class action in which "(1) "any member of a class of plaintiffs is a citizen of a State different from any defendant;" (2) the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100;" and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."   *See* 28 U.S.C. §§ 1332(d)(2) and (d)(5)(B); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).

A.      **The Complaint Constitutes a Class Action.**

7.      For purposes of CAFA, a "class action" is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."   28 U.S.C.¶ 1332(d)(1)(B).

8.      As detailed *supra*, Plaintiff has brought its claims, and seeks judgment and relief, "on behalf of itself and the general public of the District of Columbia," pursuant to the District of Columbia Consumer Protection Procedures Act,

9.      An action brought under the District of Columbia Consumer Protection Procedures Act, that seeks judgment and relief on behalf of the general public of the District of Columbia, constitutes a class action.  *Rotunda v. Marriott Int'l, Inc.*, 123 A. 3d 980 (D.C. 2015). Although Strickland reserves the right to challenge class certification, Plaintiff has alleged a class action as that term is defined by 28 U.S.C. § 1332(d)(1)(B).

**B.      Diversity of Citizenship under CAFA.**

10.     At least one member of the class of plaintiffs is a citizen of a state different from at least one defendant.  The named plaintiff, Center for Environmental Health, is incorporated under the laws of the state of California, with its principal place of business in California. Compl. ¶ 6.  Center for Environmental Health is therefore a citizen of California.

11.     Strickland is a Tennessee corporation with its principal place of business in Mississippi.  Strickland is therefore a citizen of Tennessee and Mississippi.

12.     In class actions covered by CAFA, the requisite diversity of citizenship is satisfied as long as there is "minimal diversity," that is, so long as "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A); s*ee Blockbuster*, 472 F.3d at 58-59.  That requirement is satisfied here by the diverse citizenship of the Center for Environmental Health and Strickland.

**C.      Number of Proposed Class Members Under CAFA.**

13.     There are at least 100 members of all proposed plaintiff classes.  The Center for Environmental Health's Complaint is brought "on behalf of itself and the general public of the District of Columbia," *see* Count One.  There are over 600,000 residents of the District of Columbia.  Furthermore, in excess of 100 D.C. residents buy and use one or more of the products at issue in the Complaint.  Thus, the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100."  28 U.S.C. § 1332 (d)(5)(B).

### D. Amount in Controversy under CAFA.

14.     The aggregate cost to all Defendants to comply with the monetary and injunctive relief sought in the Complaint will exceed the sum or value of $5,000,000, exclusive of interest and costs.   *See* 28 U.S.C. § 1332(d)(6) (providing that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000").

15.     Even prior to the passage of CAFA, courts in the District of Columbia Circuit quantified the amount in controversy in actions seeking injunctive relief by evaluating such relief from the perspective of *either* the plaintiffs or the defendants.   Thus, in cases seeking injunctive relief in this Circuit, the amount in controversy requirement was satisfied if such relief had either a value to plaintiffs *or* a cost to defendants equal to or greater than the required dollar amount. *See Smith v. Washington,* 593 F.2d 1097, 1099 (D.C. Cir. 1978); *United States Jaycees v. Superior Court*, 491 F. Supp. 579, 581 (D.D.C. 1980).

16.     This evaluative rule in injunction cases that has long been the law in the District of Columbia Circuit has since been incorporated into CAFA, and is indisputably the rule for cases like this, which are removed under that statute.   Specifically, the Senate Committee Report accompanying CAFA makes clear that the amount in controversy under the statute is met "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."   *Senate Comm. on the Judiciary, 109th Cong., Report on the Class Action Fairness Act of 2005*, S. Rep. No. 109-14, at 42 (2005).

17.     According to the Senate Committee Report, Congress intended that the provisions of CAFA relating to the amount in controversy should "be interpreted expansively," and that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action

'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  S. Rep. No. 109-14, at 42 ("If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied).").

18.     The Complaint's Prayer for Relief seeks the following: a declaration that Defendants' conduct violates the Act; an order preliminarily and permanently enjoining Defendants from conducting their business through the unlawful trade practices described in the Complaint; an order requiring Defendants to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits and qualities Defendants have claimed; an order requiring Defendants to implement whatever measures are necessary to remedy the unlawful trade practices described in this Complaint; and such other and as well as relief as may be just and proper.

19.     One of the specific allegedly unlawful trade practices relates to the very name of Strickland's "Doo Gro" brand products, Complaint ¶ 15.   Thus, the relief sought by the Complaint could include a cessation of the use of the very trade name of Strickland's products.

20.     The Doo Gro product line has been sold for at least 20 years.   Strickland purchased the Doo Gro product line in 2012, for a price of roughly $25 million, and its value has not diminished since that time.   The majority of the value associated with the purchase related to the value of the Doo Gro trade name and the goodwill that this trade name had built up over decades of use.   Injunctive relief that required that Strickland cease its use of the Doo Gro trade name would impose a cost or loss in excess of $5 million.

21.     Strickland's agreements relating to the supply of the Doo Gro product line to wholesalers and retailers are limited to the supply of products that use the Doo Gro trade name. The wholesalers and retailers that purchase Doo Gro products from Strickland for ultimate sale to consumers located in the District of Columbia purchase such products for sale in other states as well.  They all utilize warehouses that supply product to both the District of Columbia and other states.  It would be impossible as a practical matter for Strickland to create two separate trade names, one a special trade name for use on products ultimately sold to District of Columbia consumers only, and the other the Doo Gro trade name, for use on products ultimately sold to consumers outside the District of Columbia.

22.     Plaintiff also seeks an order that all three Defendants conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits and qualities Defendants have claimed.  Such a campaign would entail substantial costs on top of those outlined *supra*.

23.     For all of the foregoing reasons, the aggregate cost or loss to Defendants that would result from all the relief Plaintiff seeks would be well in excess of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

**E.     Other Prerequisites.**

24.     No other defendants are required to join in this Notice.  *See* 28 U.S.C. § 1453(b) (providing that a class action "may be removed by any defendant without the consent of all defendants").

25.     This Notice is timely filed under 28 U.S.C. § 1446(b) in that it is being filed within thirty days of service of the Summons and Complaint.

26.     This case may be removed to this Court under 28 U.S.C. § 1441(a), in that the Complaint was filed in the Superior Court for the District of Columbia, which is within the District of Columbia.

27.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give notice of this Notice of Removal to all other parties.  A Notice of Filing of Notice of Removal is being filed in the Superior Court of the District of Columbia.

WHEREFORE, the case now pending in the Superior Court of the District of Columbia, is hereby removed to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1441.

Respectfully Submitted,

/s/ Steven J. Rosenbaum
Steven J. Rosenbaum (D.C. Bar No. 331728)
David J. Bender (D.C. Bar No. 1021777)
COVINGTON & BURLING LLP
850 10th Street, N.W.
Washington, D.C. 20001
(202) 662-5568
srosenbaum@cov.com

Attorneys for Defendant J. Strickland and Co.

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was sent via first-class mail, postage prepaid on this 6th day of January, 2017, to:


James R. Wrathall
SULLIVAN & WORCESTER LLP
1666 K Street, N.W.
Washington, D.C. 20006
(202) 775-1200
jwrathall@sandw.com

Mark N. Todzo
Joseph J. Mann
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
(415) 913-7800
mtodzo@lexlawgroup.com

Attorneys for Plaintiff


           /s/ Steven J. Rosenbaum
           Steven J. Rosenbaum

# Exhibit A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH (a non-profit corporation), 2201 Broadway, Suite 302, Oakland, CA 94612<br><br>Plaintiff,<br><br>vs.<br><br>VITAL'S INTERNATIONAL GROUP, 11397 Slater Avenue, Fountain Valley, CA 92708;<br><br>YAYSAVE, LLC, 2361 Rosecrans Avenue, El Segundo, CA 90245; and<br><br>J. STRICKLAND AND CO., 10420 Desoto Road, Olive Branch, MS 38654<br><br>Defendants. | Case No. <u>2016 CA 008745 B</u> |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Center for Environmental Health ("Plaintiff" or "CEH"), based on information and belief and investigation of counsel, except for information based on personal knowledge, hereby alleges:

### INTRODUCTION

1.      American hair loss sufferers spend more than $3.5 billion a year in an attempt to treat thinning and lost hair.  In order to exploit this market, Defendants Vital's International Group, Yaysave, LLC, and J. Strickland and Co. sell hair and scalp products marketed as hair growth products (the "Products").  Defendants' hair growth products are advertised, marketed, labeled, sold, and represented as products that promote hair growth and/or prevent hair loss. These products prominently feature the word "grow" or "loss prevention" on the front label,

which is known as the principal display panel.  For example, many of the Products represent prominently on the front label that such Products will "stimulate" hair growth.

2.　　　Unfortunately for consumers, Defendants' representations are not true.  Contrary to the names of the Products and the representations on the principal display panels, the Products do not stimulate or cause hair growth.

3.　　　According to the federal Food and Drug Administration ("FDA"), there is only a single ingredient for over-the-counter use – minoxidil – that has been shown to promote hair growth and is approved by the FDA for that purpose in certain concentrations.  Thus, the only nonprescription products approved for hair growth are specific topical formulations of minoxidil. The FDA has further determined that labeling claims for all other products that claim to promote hair growth besides those containing minoxidil for over the counter ("OTC") external use are "either false, misleading, or unsupported by scientific data," and that these products "cannot be considered generally recognized as safe and effective for [their] intended use." 21 C.F.R. § 310.527(a).  None of the Products contain minoxidil as an ingredient.  Thus, the hair growth labeling claims on the Products are false, misleading, and unsupported by scientific data.

4.　　　Defendants' conduct of advertising, marketing, selling, labeling, and representing that the Products cause hair growth, when they in fact do not, constitutes an unlawful trade practice under the District of Columbia Consumer Protection Procedures Act (the "Act"), D.C. Code §§ 28-3901, *et seq.*  Specifically, Defendants violate the Act by representing that the Products have characteristics, benefits, or qualities that they do not have, and by misrepresenting material facts in a way that tends to mislead consumers about the propensity of the Products to promote hair growth.

5.　　　CEH brings this deceptive advertising case on behalf of itself and the general public, and seeks declaratory and injunctive relief to halt Defendants' deceptive marketing and sale of the Products, and to ameliorate the effects of this conduct.

## PARTIES

6.　　　Plaintiff CEH is a nationally recognized non-profit corporation dedicated to

protecting the public from environmental health hazards and toxic exposures, among other things. CEH is based in Oakland, California, and incorporated under the laws of the State of California. As a consumer advocacy group, CEH is also concerned with issues of truth in advertising, accurate product labeling and marketing, and corporate accountability. CEH is a "nonprofit organization" within the meaning of D.C. Code §§ 28-3901(a)(14) and 28-3905(k)(1)(C), and brings this action in that capacity on behalf of the general public.

7.       Defendant Vital's International Group is a California corporation with its principal place of business in Fountain Valley, California. Defendant Vital's International Group advertises, markets, distributes, and/or sells the Products in the District of Columbia.

8.       Defendant Yaysave, LLC is a California limited liability company with its principal place of business in Torrance, California. Defendant Yaysave, LLC advertises, markets, distributes, and/or sells the Products in District of Columbia.

9.       Defendant J. Strickland and Co. is a Mississippi corporation with its principal place of business in Olive Branch, Mississippi. Defendant J. Strickland and Co. advertises, markets, distributes, and/or sells the Products in District of Columbia.

10.      Defendant Vital's International Group, Yaysave, LLC, and J. Strickland and Co. are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action pursuant to D.C. Code §§ 11-921 and 28-3905(k)(2).

12.      This Court has personal jurisdiction over Defendants pursuant to U.S Const., Amend. V & XIV and D.C. Code §§ 13-421 & 13-423 because each Defendant is a corporation or other entity that has sufficient minimum contacts in the District of Columbia or otherwise intentionally avails itself of the District of Columbia market either through the distribution, sale, and/or marketing of the Products in the District of Columbia so as to render the exercise of jurisdiction over it by the District of Columbia courts consistent with traditional notions of fair play and substantial justice.

13.     Venue in this Court is proper because substantial acts in furtherance of the alleged improper conduct, including Defendants' deceptive marketing and sale of the Products, occurred within the District of Columbia. In particular, CEH purchased Defendants' Products within the District of Columbia.

## FACTUAL ALLEGATIONS

14.     Seeking to capitalize on consumers' fear and anxiety surrounding their thinning and lost hair, Defendants market the Products as hair care and scalp treatments formulated and designed to grow hair. Defendants prominently represent on the principal display panels of all of the Products that the Products will either "grow," "regenerate," or "strengthen" the user's hair, and/or or "stimulate" parts of the head that grow hair (such as follicles and the scalp).

15.     Defendant J. Strickland and Co.'s "Doo Gro" brand Products include, for example, the Doo Gro® Mega Thick® Growth Oil, which is representative of other Products manufactured, distributed, and/or sold in the District of Columbia by this Defendant. The Doo Gro® Mega Thick® Growth Oil states on the Product's front label that it "promotes thick, strong, and growing hair." Indeed, the "Doo Gro" brand name itself represents that Defendant J. Strickland and Co.'s Products, in fact, "do grow" hair. Other Products manufactured, sold, and/or marketed by Defendant J. Strickland and Co. in the District of Columbia include, but are not limited to, a Doo Gro® Mega Thick® Anti-Thinning Formula Hair Vitalizer and a Doo Gro® Stimulating Growth Oil.

16.     The term "grow," which appears on the principal display panels of each of Defendant J. Strickland and Co.'s Products, is commonly defined as "to cause to grow" or "to increase, expand."[1] As a result, the packaging represents to consumers that these Products will cause hair to grow or promote hair growth and that they are therefore superior to other products on the market that do not make this claim.

17.     Defendants Vital's International Group's and Yaysave, LLC's "Pura D'Or" brand

---

[1] *See* Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/grow.

Products include, for example, the Pura D'Or Anti-Hair Loss Shampoo, which is representative of other Products manufactured, distributed, and/or sold in the District of Columbia by these Defendants. The Pura D'Or Anti-Hair Loss Shampoo states on the Product's front label that it "regenerates hair," "revitalizes follicles," and "supports healthy scalp." Indeed, the use of the terms "Anti-Hair Loss" and "Hair Loss Prevention" by Defendants Vital's International Group and Yaysave, LLC in their Products' names represents that these Products, in fact, do halt hair loss. Other Products manufactured, sold, and/or marketed by Defendants Vital's International Group and Yaysave, LLC in the District of Columbia include, but are not limited to, a "Pura D'Or" line of "Hair Loss Prevention Therapy" Shampoos and Conditioners, a Scalp Serum, and a Moisturizing Masque.

18.    The term "regenerate" is commonly defined as "to produce anew" or "to replace ... by a new growth."[2] Similarly, "revitalize" means "to make [something] active, healthy, or energetic again."[3] At least one of these terms appears on the principal display panels of each of Defendants Vital's International Group and Yaysave, LLC's Products. As a result, the packaging represents to consumers that these Products will cause hair to grow or promote hair growth and that they are therefore superior to other products on the market that do not make this claim.

19.    The Products are deceptively and uniquely marketed, in contrast to other hair and scalp care products, as products that will promote hair growth, when they in fact do not. Indeed, the Products are significantly more expensive than similar products that do not claim to promote hair growth.

20.    In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, after Congress "became increasingly concerned about unsafe drugs and fraudulent marketing." *Wyeth v. Levine*, 555 U.S. 555, 566 (2009). Through the FDCA, the

---

[2] *See* Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/regenerate.

[3] *See* Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/revitalize.

FDA regulates the marketing of OTC drug products.

21.    Among other things, the FDCA prohibits the sale of adulterated or misbranded drugs, and requires manufacturers to apply to the FDA for premarket approval of new drugs or comply with an OTC drug monograph. *See* 21 U.S.C. § 331.

22.    Under the FDCA:

The term "drug" means (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

21 U.S.C. § 321(g). The Products are represented as being able to cure, mitigate, and treat hair loss and as affecting the function of the user's hair growth. Accordingly, the Products are drug products. While the Products may also be cosmetics within the statutory definitions of that term, the Products must still comply with all of the legal requirements for drug products. *See, e.g.*, 21 C.F.R. § 701.3(d); FDA Cosmetic Labeling Manual, 1991 WL 11250880, at *1 ("Products that are cosmetics but are also intended to treat or prevent disease, or affect the structure or functions of the human body, are considered also drugs and must comply with both the drug and cosmetic provisions of the law.").

23.    Any product that is labeled, represented, or promoted as a hair growth product is a drug under the FDCA. *See* 21 C.F.R. § 310.527(b).

24.    A manufacturer seeking premarket approval of a new OTC drug must submit a detailed new drug application ("NDA"), which must include:

evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use

prescribed, recommended, or suggested in the labeling or proposed labeling
thereof.

21 U.S.C. § 355(d). Moreover, after the FDA approves a new drug application, any change in
the drug's labeling requires a supplement to the application, and further approval by the FDA,
either before or after the change. 21 C.F.R. §§ 314.70(b) & (c), 314.71.

25.     An OTC drug manufacturer need not seek premarket approval if its marketing of
the OTC drug is in compliance with an OTC drug monograph. Unlike NDAs which are based on
drug products, monographs specify the active ingredients that can be contained within OTC drug
products. An OTC drug product containing ingredients that comply with standards established in
an applicable monograph is considered to be "generally recognized as safe and effective" and
does not require specific FDA approval before marketing.[4] In drafting the monographs, the FDA
divided OTC drugs into drug categories, which were then assigned to an advisory review panel
of qualified experts who evaluate the safety and effectiveness of the OTC drugs, review the
drugs' labeling, and advise the FDA Commissioner on the promulgation of monographs
establishing conditions under which OTC drugs listed within each monograph are generally
recognized as safe, effective, and not misbranded. 21 C.F.R. § 330.10(a).

26.     In 1989, a final drug monograph was issued for the category of hair growers and
hair loss prevention drug products for OTC human use. 21 C.F.R. § 310.527. At that time, the
FDA determined that there were no effective OTC treatments for thinning hair or hair loss. The
monograph provides that "any OTC drug product for external use containing an ingredient
offered for use as a hair grower or for hair loss prevention cannot be considered generally
recognized as safe and effective for its intended use." *Id.* § 310.527(a). The monograph also
provides that "all labeling claims for OTC hair grower and hair loss prevention drug products for
external use are either false, misleading, or unsupported by scientific data." *Id.*

27.     Subsequent to the issuance of this final drug monograph, FDA approved Rogaine

---

[4] FDA, Regulatory Mechanisms for Marketing OTC Drug Products, *available at*
http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/uc
m106386.htm (last visited April 19, 2016).

(minoxidil two percent topical solution) for OTC external use as a hair growth stimulant. FDA, Center for Drug Evaluation & Research, Approval Letter for App. No. NDA 20-834 (Nov. 14, 1997). Thus, minoxidil is currently the only ingredient approved for OTC external use as a hair growth stimulant.

28.     The District of Columbia Consumer Protection Procedures Act is a comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices that may injure consumers. *See Atwater v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 566 A.2d 462, 465 (D.C. 1989). The purposes of the Act are to "assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices," to "promote, through effective enforcement, fair business practices throughout the community," and to "educate consumers to demand high standards and seek proper redress of grievances." D.C. Code § 28-3901(b). The Act "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia," and "shall be construed and applied liberally to promote its purpose." *Id.* § 28-3901(c).

29.     The Act enumerates an extensive list of "unlawful trade practices," which the Council of the District of Columbia has determined to be injurious to consumers *per se*. D.C. Code § 28-3904. Engaging in any of these practices constitutes a violation of the Act "whether or not any consumer is in fact misled, deceived or damaged thereby." *Id.*

30.     Among other things, the Act makes it an unlawful trade practice to:

- "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," D.C. Code § 28-3904(a);

- "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another," *id.* § 28-3904(d);

- "misrepresent as to a material fact which has a tendency to mislead," *id.* § 28-3904(e);

- "[r]epresent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law," *id.* § 28-3904(e-1);

- "fail to state a material fact if such failure tends to mislead," *id.* § 28-3904(f);

- "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead," *id.* § 28-3904(f-1);

- "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered," *id.* § 28-3904(h); and

- "sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law," *id.* § 28-3904(x).

31.     None of the Products contain minoxidil, nor do any of them contain ingredients that are approved by FDA as hair grower products for OTC human use.

32.     Thus, Defendants' representations that their Products will cause hair growth are unlawful, false, deceptive, and misleading as determined by FDA.

33.     Defendants' representations on the principal display panels of the Products that the Products will "grow," "regenerate," "revitalize," "strengthen," or "stimulate" the user's hair, follicles, or scalp, or that the Products will "prevent hair loss," mislead consumers into believing the Products will cause hair to grow, when they in fact do not.

34.     Defendants know that use of the words "grow," "regenerate," "revitalize," "strengthen," or "stimulate" in connection with the user's hair, follicles, or scalp on the front label of the Products misleads consumers into believing the Products will cause or promote hair growth.

35.     Defendants' ongoing practice of advertising, marketing, labeling, selling, and representing that the Products cause or promote hair growth, when in fact they do not, is likely to deceive ordinary consumers of the Products. Such consumers reasonably understand the labeling of the Products to mean that the Products will cause or promote hair growth. In reliance on

Defendants' claims, ordinary consumers purchase Products that they would not have purchased but for Defendants' false promotion of the Products as causing or promoting hair growth, or paid a premium for the Products in comparison to similar hair and scalp products that do not claim to grow hair.

## COUNT ONE

**(Plaintiff CEH, On Behalf of Itself and the General Public of the District of Columbia, Alleges Violations of the District of Columbia Consumer Protection Procedures Act)**

36.     Plaintiff incorporates by reference the allegations set forth above.

37.     Plaintiff CEH is both a "nonprofit organization" within the meaning of D.C. Code §§ 28-3901(a)(14) and 28-3905(k)(1)(C), and a "consumer" within the meaning of D.C. Code §§ 28-3901(a)(2) and 28-3905(k)(1)(A).

38.     Defendants are each a "person" within the meaning of D.C. Code §§ 28-3901(a)(1) and 28-3904, and a "merchant" within the meaning of D.C. Code § 28-3901(a)(3).

39.     The Products sold by Defendants are "goods" within the meaning of D.C. Code § 28-3901(a)(7).

40.     Defendants have violated and continue to violate the provisions of the Act, D.C. Code § 28-3904(a), (d), (e), (e-1), (f), (f-1), (h), and (x), as described above.

41.     The Act provides, in part, that:

> A nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.

D.C. Code § 28-3905(k)(1)(C).

42.     The Act further provides that such actions "shall be brought in the Superior Court of the District of Columbia," and specifies various remedies that such an enforcer "may" obtain, including "[a]n injunction against the use of the unlawful trade practice," "[r]easonable attorney's fees," and "[a]ny other relief which the court determines proper." D.C. Code § 28-3905(k)(2).

Wherefore, CEH prays for judgment against Defendants, as set forth hereafter.

## PRAYER FOR RELIEF

CEH demands judgment and relief on behalf of itself and the general public of the District of Columbia against Defendants as follows:

A.     A declaration that Defendants' conduct is in violation of the District of Columbia Consumer Protection Procedures Act;

B.     An order preliminarily and permanently enjoining Defendants from conducting their business through the unlawful trade practices described in this Complaint;

C.     An order requiring Defendants to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and qualities Defendants have claimed;

D.     An order requiring Defendants to implement whatever measures are necessary to remedy the unlawful trade practices described in this Complaint;

E.     An order awarding Plaintiff its reasonable attorneys' fees and costs of suit; and

F.     That the Court grant such other and further relief as may be just and proper.

DATED:  December 5, 2016                    Respectfully submitted,

_James R. Wrathall (DC Bar No. 423631)_
SULLIVAN & WORCESTER LLP
1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 775-1200
Facsimile: (202) 293-2275
E-mail: jwrathall@sandw.com

Mark N. Todzo (*Application Pro Hac Vice Pending*)
Joseph J. Mann (*Application Pro Hac Vice Pending*)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
E-mail: mtodzo@lexlawgroup.com

Attorneys for Plaintiff
CENTER FOR ENVIRONMENTAL HEALTH

# Exhibit B



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Center for Environmental Health
_____
                                                        Plaintiff

vs.                                                Case Number 2016 CA 008745 B

J. Strickland and Co.
_____
                                                        Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James R. Wrathall
_____                    _Clerk of the Court_
Name of Plaintiff's Attorney

    1666 K Street N.W.
_____          By _____
Address                                                                        Deputy Clerk
    Washington, D.C., 20006

    (202) 775-1200
_____          Date    12/06/2016
Telephone

如需翻譯，請打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Center for Environmental Health
_____
                        Demandante

        contra

    J. Strickland and Co.                    Número de Caso: _____
_____
                        Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James R. Wrathall                        *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

    1666 K Street N.W.                   Por: _____
_____
Dirección                                        Subsecretario
    Washington, D.C. 20006

        (202)775-1200                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

# Exhibit C

Filed
D.C. Superior Court
12/05/2016 13:56BM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Center for Environmental Health

Case Number: **2016 CA 008745 B**

vs

Date: December 5, 2016

Vital's International Group, et al.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*  James R. Wrathall | Relationship to Lawsuit |
|---|---|
| Firm Name: Sullivan & Worcester LLP | ☐ Attorney for Plaintiff |
| Telephone No.: Six digit Unified Bar No.: (202) 775-1200    423631 | ☐ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE: ☒ Non-Jury      ☐ 6 Person Jury      ☐ 12 Person Jury

Demand: $ _____                Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

---

**NATURE OF SUIT:** *(Check One Box Only)*

**A. CONTRACTS**                          **COLLECTION CASES**

☐ 01 Breach of Contract         ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty         ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument      ☐ 27 Insurance/Subrogation                      ☐ 26 Insurance/Subrogation
☐ 07 Personal Property               Over $25,000 Pltf. Grants Consent           Over $25,000 Consent Denied
☐ 13 Employment Discrimination  ☐ 07 Insurance/Subrogation                ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent        Under $25,000 Consent Denied
                                ☐ 28 Motion to Confirm Arbitration
                                   Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile                 ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion                 ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process           ☐ 10 Invasion of Privacy        ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection    ☐ 11 Libel and Slander              Not Malpractice)
☐ 03 Assault and Battery        ☐ 12 Malicious Interference     ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution     ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation) ☐ 14 Malpractice Legal          ☐ 20 Friendly Suit
☐ 06 False Accusation           ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest               ☐ 16 Negligence- (Not Automobile, ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                          Not Malpractice)            ☐ 23 Tobacco
                                                                ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-1 (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ James R. Wrathall
_____
Attorney's Signature

12/0?/2016
_____
Date

CV-496/ June 2015

# Exhibit D



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

CENTER FOR ENVIRONMENTAL HEALTH
    Vs.
VITALS INTERNATIONAL GROUP et al

C.A. No.    2016 CA 008745 B

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge MAURICE ROSS
Date:  December 6, 2016
Initial Conference: 9:00 am, Friday, March 10, 2017
Location:  Courtroom 100
        500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Caio.doc

# Exhibit E

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

|  |  |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH, ) | Case No. 2016 CA 008745 B |
| Plaintiff, ) | Judge Maurice Ross |
| v. ) | Next Event:   Initial Conference |
| VITAL'S INTERNATIONAL GROUP, ET AL., ) | March 10, 2017 (9:00 AM) |
| Defendants. ) | |

**PRAECIPE EXTENDING TIME FOR DEFENDANTS TO ANSWER**
**OR OTHERWISE RESPOND TO COMPLAINT**

Pursuant to Rule 55(a)(2) of the D.C. Superior Court Rules of Civil Procedure, it is hereby stipulated and agreed, by and between Plaintiff Center for Environmental Health and Defendants Vital's International Group and Yaysave, LLC (collectively, "Defendants") through their undersigned counsel that Defendants' time to answer or otherwise respond to Plaintiff's Complaint shall be extended to and including January 23, 2017.

Date: December 22, 2016

Respectfully submitted,


 /s/ James R. Wrathall
James R. Wrathall (DC Bar No. 423631)
Sullivan & Worcester LLP
1666 K Street NW
Washington, DC 20006
Telephone: (202) 775-1200
Fax: (202) 293-2275
jwrathall@sandw.com

 /s/ Erin Zacuto Cass
Michelle C. Jackson (DC Bar No. 491815)
Erin Zacuto Cass (DC Bar No. 1032388)
Venable LLP
575 7th Street NW
Washington, DC 20004
Telephone: (202) 344-4452
Fax: (202) 344-8300
mcjackson@venable.com
ezcass@venable.com
*Counsel for Defendants Vital's International*
*Group and Yaysave, LLC*

Mark N. Todzo
Joseph J. Mann
Lexington Law Group
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Fax: (415) 759-4112
mtodzo@lexlawgroup.com
*Counsel for Plaintiff*

# Exhibit F

Court Cases Online

D.C. Courts Home

## Court Cases Online

Case Search for Company: CENTER FOR ENVIRONMENTAL HEALTH

Search retrieved 1 case in 3.74 seconds.

All retrieved cases available for view

Viewing single case; Details retrieved in less than a second.

Click here to view search criteria

Click here to view search results

Click here to view case summary

### 2016 CA 008745 B: CENTER FOR ENVIRONMENTAL HEALTH Vs. VITALS INTERNATIONAL GROUP, et al.

| | | | |
|---|---|---|---|
| Case Type: | Civil II | File Date: | 12/05/2016 |
| Status: | Open | Status Date: | 12/05/2016 |
| Disposition: | Undisposed | Disposition Date: | |

| Party Name | Party Alias(es) | Party Type | Attorney(s) |
|---|---|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH | | Plaintiff | WRATHALL, Mr JAMES R |
| VITALS INTERNATIONAL GROUP | | Defendant | CASS, ERIN Z. |
| YAYSAVE, LLC | | Defendant | CASS, ERIN Z. |
| J. STRICKLAND AND CO. | | Defendant | |

| Schedule Date | Schedule Time | Description |
|---|---|---|
| 03/10/2017 | 09:00 AM | Initial Scheduling Conference-60 |

| Docket Date | Description | Messages |
|---|---|---|
| 12/30/2016 | Judge Caseload Transfer | Judge Caseload Transfer<br>The judge was changed from ROSS, MAURICE to KRAVITZ, NEAL . |
| 12/30/2016 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 03/10/2017 Time: 9:00 am<br>Judge: KRAVITZ, NEAL E Location: Courtroom 100 |
| 12/22/2016 | Praecipe to Extend Time Filed | Praecipe Extending Time for Defendants to Answer or Otherwise Respond to Complaint Filed. submitted 12/22/2016 11:55. tds<br>Attorney: CASS, ERIN Z. (1032388)<br>VITALS INTERNATIONAL GROUP (Defendant); YAYSAVE, LLC (Defendant); |
| 12/06/2016 | Service Issued | Issue Date: 12/06/2016<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br>VITALS INTERNATIONAL GROUP<br>11397 Slater Ave.<br>FOUNTAIN VALLEY, CA 92708<br>Tracking No: 5000182082<br><br>YAYSAVE, LLC<br>2361 Rosecrans Ave.<br>EL SEGUNDO, CA 90245<br>Tracking No: 5000182083<br><br>J. STRICKLAND AND CO.<br>10420 Desoto Road<br>OLIVE BRANCH, CA 38654<br>Tracking No: 5000182084 |
| 12/06/2016 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 03/10/2017 Time: 9:00 am<br>Judge: ROSS, MAURICE Location: Courtroom 100 |

| Docket Date | Description | Messages |
|---|---|---|
| 12/05/2016 | Complaint for Deceit (Misrepresentation) Filed | Complaint for Deceit (Misrepresentation) Filed Receipt: 354830 Date: 12/06/2016 |

| Receipt # | Date | From | Payments | | Fee | | Amount Paid |
|---|---|---|---|---|---|---|---|
| 354830 | 12/06/2016 | WRATHALL, Mr JAMES R | Efile | $120.00 | Cost | $120.00 | $120.00 |